(C.D. 4350)

AMERICAN HONDA MOTOR CO. ET AL. *v.* UNITED STATES

## United States Customs Court, Third Division

(Decided April 6, 1972)

*Stein & Shostak* (*Leonard M. Fertman* of counsel) for the plaintiffs.

*L. Patrick Gray, III*, Assistant Attorney General (*Sheila N. Ziff* and *Joseph 1. Liebman*, trial attorneys), for the defendant.

Before RICHARDSON and LANDIS, Judges

RICHARDSON, Judge: Base metal articles consisting, among other things, of drive chain cases, exhaust pipe protectors and covers, stands (side and center), and handlebar-speedometer holders used on Honda motorcycles, were exported from Japan and classified in liquidation upon entry at the port of Los Angeles, Calif. under TSUS item 692.55 at the duty rate of 12 per centum ad valorem as parts of motorcycles. It is claimed in the protests that these articles are properly dutiable at 8.5 per centum ad valorem under item 647.01 as hinges, fittings, and mountings designed for motor vehicles.

The competing tariff provisions read:

[classified under]

Motorcycles and parts thereof:

| | | | | | | |
|---|---|---|---|---|---|---|
| * | * | * | * | * | * | * |

692.55     Parts _____     12% ad val.

[claimed under]

Hinges; and fittings and mountings not specially provided for, suitable for furniture, doors, windows, blinds, staircases, luggage, vehicle coach work, caskets, cabinets, and similar uses; all the foregoing of base metal, whether or not coated or plated with precious metal:

Not coated or plated with precious metal:

Of iron or steel, of aluminum, or of zinc:

647.01          Hinges, fittings, and mountings, designed for motor vehicles____     8.5% ad val.

At the trial plaintiffs' counsel conceded that the articles in question are motorcycle parts, but took the position that these articles are especially provided for as hinges, fittings or mountings designed for motor vehicles, and are, therefore, properly dutiable under item 647.01 of the tariff schedules in accordance with General Headnote 10(ij) which provides that a provision for "parts" of an article covers a product solely or chiefly used as a part of such article, but does not prevail

over a specific provision for such part. Three witnesses from various segments of the motorcycle industry called on plaintiffs' behalf testified that the subject articles fit within their understanding of the lexicographical meanings of the terms "hinges", "fittings", and "mountings". In the main these witnesses grouped the stands, cases, protectors, and covers as "fittings" and the holders as "mountings". But one of these witnesses regarded the cases as "mountings" and the stands as "hinges". And still another of them considered the holders to be "fittings". A fourth witness from the industry, called on behalf of the defendant, did not regard any of the subject articles to be "hinges", "fittings", or "mountings", in the trade, but admitted that they came within the ambit of the definitions propounded by plaintiffs' counsel.

The testimony of witnesses relative to the common meaning of tariff terms is advisory only, and has no binding effect upon the court which is privileged to be guided by its own understanding of such terms aided or unaided by other authorities. *United States* v. *John B. Stetson Co.*, 21 CCPA 3, 9, T.D. 46319 (1933). Lexicographical authorities called to our attention by the plaintiffs disclose the following definitions:

> *hinge*, 1. The hook with its eye, or the joint, or flexible piece, on which a door, gate, lid, etc. turns or swings.
> (Webster's New International Dictionary, Second Edition, Unabridged, 1935)

> *hinge* 1a. A jointed or flexible device on which a door, lid, or other swinging part turns comprising typically a pair of metal leaves joined through the knuckles by a pin. b: A flexible ligamentous joint * * *
> (Webster's Third New International Dictionary, Unabridged, 1963)

> *fitting*, * * * 2. Anything used in fitting up; esp. pl., necessary fixtures or apparatus; auxiliary parts, as of a boiler, or the small parts of a machine; * * *
> (Webster's New International Dictionary, Second Edition, Unabridged, 1935)

> *fitting* n 1a: something used in fitting up: ACCESSORY, ADJUNCT, ATTACHMENT * * * b: a small often standardized part (as a coupling, value, gauge) entering into the construction of * * * other apparatus—usu. used in pl.; * * *
> (Webster's Third New International Dictionary, Unabridged, 1963)

> *mounting*, n. * * * 2. That which serves as a mount or by which anything is prepared or equipped for use, or set off to advantage; equipment; embellishment; setting; * * * b The standard or support; as, an equatorial mounting.
> (Webster's New International Dictionary, Second Edition, Unabridged, 1935)

*mounting* n * * * 2: FRAME, SUPPORT, EMBELLISHMENTS as a: A jewelry setting * * * b: a handle, mount, or coupling for a mechanical device.
(Webster's Third New International Dictionary, Unabridged, 1963)

The testimony at bar indicates that the subject articles, with the exception of the handlebar-speedometer holders, have *end use* functions on the motorcycles on which they are installed. Thus, the protectors and covers insulate the operator from the heat of engine exhaust gases, the cases shield the operator from oil flung from the drive chain when the vehicle is being driven, and the stands hold the vehicles in an upright position when they are parked or stored. And it is this characteristic of *end use* function which, in our opinion, excludes these articles from the purview of the above definitions. For the common denominator of all the definitions noted above is that they define articles which possess only *auxiliary* uses and functions—the antithesis of what the evidence reveals in this case with respect to the protectors, covers, cases and stands. The handlebar-speedometer holders, however, do possess the *auxiliary* function characteristic of a "mounting" as defined above in that they are installed and function as a means of support for the steering apparatus, namely, the handlebar, and as support for the speedometer.

But, even if all of the subject articles could be said to come within the lexicographical meaning of the terms "hinges", "fittings", and "mountings", we are of the opinion that they are not such as is contemplated by item 647.01. In *Schwarz* v. *United States*, 57 CCPA 19, C.A.D. 971 (1969), involving ski carriers and luggage racks classified under TSUS item 657.20 as articles of iron or steel and claimed to be classifiable under TSUS item 647.01 as fittings and mountings designed for motor vehicles, our appeals court, after reviewing the legislative history of item 647.01, among other things, stated with respect to this history:

> . . . the reference to paragraph 369(c) of the 1930 act, which specifically covered only "parts" of motor vehicle bodies, make[s] it clear that the class of merchandise intended to be covered by the new item 647.01 encompasses only such articles as go into and become a *part* of a motor vehicle coach.

And the appeals court went on in *Schwarz* to conclude, among other things, that the ski carriers and luggage racks were not *automobile bodies* as that term is construed in tariff statutes.

The particular legislative language to which the court of appeals had reference in *Schwarz* was taken from House Report No. 342 on H.R. 7969, 89th Congress, first session (1965), wherein the Committee on Ways and Means stated on page 23 of its report:

It now appears in the light of more complete data available that certain of the estimated weighted average rates of duty in the TSUS [Tariff Schedules of the United States] should be changed:

(a) Hinges and fittings, etc.—Subsection (a) of section 30 repeals item 647.00 and in effect divides its former scope into two parts with new item 647.01, re-establishing the former rate of duty (8.5 percent ad valorem) imposed under paragraph 369(c) for hinges, fittings, and mountings, designed for motor vehicles. It was found that there is quite a substantial import trade in such articles. Included herein are such articles as special types of hinges for trunk lids, doors, windows, hoods, and glove compartments, convertible top supports, window regulator escutcheons, window channels, dashboard trim, and interior and exterior trim.

Plaintiffs agree that the master rule of construction is the ascertainment of the legislative intent; and presumably toward that end have adverted to the House Report No. 342 on pages 22–23 of their brief. However, plaintiffs omit in their brief the last sentence noted above which, through the exemplars given, places hinges in the same category with fittings and mountings under the subject of motor vehicle bodies, i.e., special types of hinges for trunk lids, doors, windows, hoods, and glove compartments. And it is to be noted that subsection (a) of section 30 of H.R. 7969 as proposed in the House, was accepted by the Senate and thereafter signed into law unchanged. See 2 U.S. Cong. & Adm. News, '65, pages 3439, 3442–3443.

Thus, in view of the foregoing legislative history, the only hinges, fittings, and mountings which are classifiable under item 647.01 insofar as this case is concerned are those which are either suitable for vehicle coachwork, or, as plaintiffs point out, suitable for uses similar to vehicle coachwork. None of the articles before the court in this case have been shown to be suitable for vehicle coachwork. And there is no occasion here for the court to consider the residual language "and similar uses" appearing in the headnote preceding item 647.01 as embracing the articles at bar. Such an application would enlarge the scope of item 647.01 to include articles dutiable under the old schedules at rates of duty higher than the prior 8.5 percent duty rate level contemplated by Congress in the creation of item 647.01 from the former item 647.00. And as our appeals court pointed out in *Schwarz* v. *United States*, *supra*, "it appears that it was the intention of the Committee not to enlarge or change the scope of former item 647.00 but to divide it into two sections with one section providing for a lower rate for such motor vehicle fittings and mountings as had been previously covered." The other section preserves the residual coverage of iron or steel, of aluminum, or of zinc in item 647.03.

For the reasons stated, we, therefore, agree with the defendant that the articles at bar are not classifiable under item 647.01. Consequently, the protests are overruled.

Judgment will be entered accordingly.